Hale, J.
The case of The Elyria Gas & Water Company v. The City of Elyria comes into this court by appeal, and has been ■submitted upon an agreed statement of facts. The case has been prepared with more than usual care by the attorneys upon both sides. The city had, prior to the commencement of this action, taken certain preliminary steps towards the erection of water works to supply the city and its inhabitants with water, and was proceeding in the execution of the plan proposed when this action was commenced.
The plaintiff is a corporation, having its principal place of business in this city, and therefore a resident of the city, and a tax-payer. It requested the corporation counsel or ■solicitor of the city to bring an action to enjoin the city from proceeding further with that enterprise, on the ground that, to do so,was an abuse of corporate power; that the city was proceeding illegally in the execution of that enterprise.
It is objected, first, that the case made does not fall within the statute authorizing a tax payer, on the refusal of the •solicitor, to bring the action. It is somewhat doubtful whether this action is properly maintainable by this plaintiff.
■ Generally, if the action is to enforce the private rights ■of the corporation bringing the action, it could not be maintained.
*221 It is only to enforce a public right that this action can be sustained.
There are certain allegations in the petition, and certain facts that transpired on the hearing, that certainly could not but raise a query in the minds of the court whether,in fact, the real object of the action was not to enforce some private rights of the plaintiff.
It will be conceded that by the statute of the state, ample authority is given to the city council or to a municipality to construct and maintain water-works for the purpose of supplying a city and its inhabitants with water. I suppose it will be further conceded that, except for the limitation contained in the statute, the power conferred upon the municipality is ample to enable it to construct water-works without a vote of the electors of the corporation, if there is money in the treasury subject to an appropriation for that purpose.
But it might defeat an enterprise of this kind to delay the commencement of the work until the money needed could be raised by taxation. That is, to get the money into the treasury by taxation before going forward with the construction, would necessitate a delay that would be entirely unreasonable.
The limitation to which I refer, is contained in sec. 2702, of the Revised Statutes, which provides that no contract, agreement or other obligation involving the expenditure of money, shall be entered into, nor shall any ordinance, resolution or order, for the appropriation or expenditure of money, be passed by the councilor by any board or officer of a municipal corporation, unless the auditor of the corporation, and if there is not an auditor, the clerk thereof, shall first certify that the money required for the contract, agreement or other obligation, or to pay the appropriation or-expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any *222 other purpose, which certificate shall be filed and immediately recorded. It will be seen that the corporation could not go forward with this work until the money was* in the treasury to pay the contracts that must be made to carry out the enterprise.
To enable the city to go forward with the work, the-legislature has conferred upon the municipality, with certain-restrictions, the power to issue and sell the bonds and put the money into the treasury.
The mode to be pursued in the issuing and selling of these bonds, is quite clearly defined by statute. Section-2835 of the Revised Statutes provides, in substance, that the trustees of any township or hamlet, or the council of any municipal corporation, may issue and sell their bonds-in amount and denominations such as they may deem necessary for the special purpose in view, whenever it is desired by the voters of such township or municipal corporation to make any of the following improvements, or to provide for any of the following purposes, and among those enumerated,, for erecting or purchasing water-works and supplying water to the township or corporation and the inhabitants thereof.
Sec. 2837 then provides for the steps to be taken in provding for the issue of bonds. Before any bonds are issued or tax levied, as provided in the next two preceding sections-the question of issuing the bonds shall be submitted to the voters of the township or municipal corporation at a general or special election. And whenever the trustees of any township, or hamlet, or the council of any municipal corporation shall by resolution declare it necessary to issue and sell the bonds of such township, hamlet, or municipal corporation, as the case may be, for any or either of the purposes mentioned in Sec. 2835 of the Revised Statutes, ire any amount specified in such resolution, and shall, by such-resolution, fix a date upon which the question of issuing and selling such bonds shall be submitted to the electors of *223 such township, hamlet, or municipality, and shall cause a copy of such resoluton to be certified to the deputy state supervisor of the county in which such township, hamlet, or municipal corporation is situated, or board of election in such cities as have such boards, (and) such deputy state supervisor, or board of election, shall, within ten days thereafter, proceed to’prepare the ballots. The details of submitting that question to the electors are provided for.
On the 6th day of March, 1896, the council of the city of Elyria passed, or attempted to pass, this resolution:
“A resolution declaring it necessary to issue bonds for the erection and purchase of water-works for the supplynig of water to the inhabitants of the city of Elyria. Beit resolved by the council of the city of Elyria, Ohio, that it is necessary to issue and sell the bonds of the said city in a sum not to' exceed $250,000.00,for the purpose of the purchase and erection of water-works for the supplying of water to the inhabitants of the city of Elyria, Ohio. And that the question of issuing and selling the bonds of said city, what amount, &c., thereby be submitted to the electors of said city at a general election to be held in said city on the 6th day of April, 1896, and that the mayor be directed to give notice of the holding of such election in the manner provided by law.
“The Clerk is hereby authorized to transmit a certified copy of this resolution to the board of deputy state supervisors of elections of Lorain county.”
At the time that resolution was passed the council was composed of eight members; there was one vacancy. At this meeting there was an attendance of six members, one of the seven being absent. Of those present, four voted in favor of its adoption, and two against it, and the jesolution was declared adopted.
It is objected, first, that the resolution is of a permanent and general nature; that it should have been read before its final adoption,-at three separate meetings of the council, *224 and, because it is not so read, is entirely void; and being; necessary to validate this proceeding,that the whole must fall..
By Revised Statutes, sec. 1694, it is provided:
“By-laws, resolutions and ordinances of a general and permanent nature, shall be fully and distinctly read on three different days, unless three-fourths of the members elected dispense with the rule. ”
There have been some changes in that section of the statute. As originally passed it read as quoted above. On the 28th day of February, 1890, 87 Ohio Laws 36, it was amended to read,
“By-laws, resolutions and ordinances of a general and permanent nature,,including those for the issue of bonds, shall be fully and distinctly read on three different days, unless three-fourths of the members elected dispense with the rule, ”
On the 31st day of March, 1893, evidently overlooking, the fact that this section had been amended in 1890, the legislature of the state again amended the original section practically as if it had not been amended in 1890. So that it now stands as first read.
The objects of this resolution in these proceedings in general terms may be said to be two.
First: To declare the necessity of providing means to carry out the proposed improvement by the issue and sale of bonds. So far it is declaratory only of an existing need.
' The second object is to provide for the necessary steps to be taken in the submission of the subject to a vote of the electors of the municipality.
’’ The resolution does not, in terms, provide for the issue' of bonds, but declares the necessity for such an issue. And when authorized and sanctioned by the electors, the council may then, by proper legislation, provide for the issue and sale of the bonds.
It is apparent that the council, in its discretion, after the *225 vote is taken, may discontinue the enterprise or go forward with it
It would be entirely competent, if deemed wise,. for the legislature of the state to authorize directly the city council to issue and sell bonds to meet the costs of improvements of íhe nature of this improvement, but it has seen fit to limit the power of the municipality by requiring the proposed issuing of bonds to be sustained by the vote of the people to whom it must be submitted.
We are dealing, then, as all concede, with a preliminary resolution, declaratory of the necessity of the improvement, and providing a mode of submitting to the people the question or proposition.
The case of Upington against Oviatt, 24 Ohio St. 232, is relied on as an authority sustaining the proposition that this is not a resolution of a general or permanent nature, requiring the formality for its passage claimed by the plaintiff. That case related to a street improvement,-and it was held that •a resolution declaring the necessity of such improvement was not a resolution of a permanent nature.
In the case of Campbell against Cincinnati, 40 Ohio St. 463, the court had under consideration the passage of an ■ordinance relating to the condemnation of private property bo public use, and not a preliminary resolution. In that ■case the supreme court held that the ordinance was of a .general and permanent nature. ■
It is said by council for plaintiff, that no distinction can be drawn between the rule applicable to ordinances and to resolutions. That is undoubtedly true if the object to be attained can be attained either by ordinance or resolution, and if the ordinance required the formality for its adoption, then the resolution would.
But a preliminary resolution declaring the necessity of the .condemnation of land, or property, for the use of the public, may not stand upon the same ground asan ordinance condemning private property for public use.
*226 One may be permanent, and tlie other not, depending apon the object and the place it fills in the proceedings to be taken.
In view of the fact that this resolution is such as I have indicated, we are of the opinion that it is not a resolution requiring the formality for its adoption claimed by the plaintiff, and that, in the manner in which it was adopted, renders the resolution a legal inactment.
I want to say that this question is, perhaps, not entirely free from difficulty, but we feel reasonably satisfied with the conclusion reached.
It is objected that the amount of the bonds to be issued is not fixed by the resolution; that the language is “not to exceed $250,000.00.’’ It is said, that this is too indefinite; that the exact amount should be stated, and to provide for the issue of bonds, not to exceed $250,000.00, gives no authority to issue any bonds. There is very little authority upon this particular point. It is claimed that the case reported in the 27th Pa. St. 389, is in point. In substance that case was founded upon the statute of the state of Pennsylvania, authorizing municipalities to subscribe for the stock of a railroad, and the limitation in the statute was, that that subscription should be made only by the grand-jury which passed upon the subject, recommending the subscription and fixing the exact amount of the subscription. The grand-jury considering the subject authorized and recommended the commissioners to subscribe for the stock of the company to an amount not exceeding $150,000. Inasmuch as the commissioners had no authority to fix any amount, and inasmuch as the grand-jury was the only power that had-that authority, and had not done it, the supreme court held the proceedings to be invalid..
But we do not think that case is in point. In this case the council had charge of that enterprise, not as in the case in Pennsylvania.
*227 There is a case reported in the 7th Circuit Court Rep. which I will refer to upon another branch of the case very soon.
A municipal corporation of Butler county, having water works within the corporation, determined that they would enlarge the plant, and connect with it an electric plant. A jpreliminary resolution was passed, declaring the necessity of enlarging the water-works and building an electric plant, and authorizing the issue of bonds not to exceed 115,000. These proceedings were sustained, no objection, however, was taken that the resolution was indefinite as to the amount, and the case is not for that reason of much weight. Still,a transaction of this kind was sanctioned by the court.
We think that the objection that the resolution and the proceedings did not definitely state the amounnt, is not well taken; that it does not invalidate the proceedings.
It is further claimed that the resolution states a double purpose for which the bonds were to be issued.
First: And the language of the resolution is, “For the erection and purchase of water-works.”
This presents a question of considerable difficulty,a fairly debatable question.
In the case reported in the 3rd Circuit Court Reports, 210, that court had before it the question of construction or purchasing gas wells in the municipal corporation. The language of the resolution was, “Issuing bonds for the purpose of purchasing or constructing gas wells.” The circuit court of that circuit, the first circuit, held, that resolution was invalid,and the proceédings founded upon it were illegal and void, for the reason that the resolution contained a double purpose.
In the 7th Circuit Court Reports,page 30,that same.court had before it the case to whch I have referred, where there were proceedings to enlarge the water-works it and, in connection therewith, construct an electric light plant.
In the resolution submitted providing for a . submission *228 to the vote of the people the object specified, waB for the construction of or to increase the capacity of the waterworks and to construct in connection therewith an electric light plant.
That court, in considering the question, say, there is no express provision in the statute, and we see no implication therein that the council may not unite in the proposed improvement, two or more things so authorized by law, if they are so intimately connected as'in fact to form but one improvement, as the evidence shows it to be in the case under consideration.
It may be, although it is not stated in the opinion, that the change made in the statute has affected this question.
But here we have a city proposing to supply the city and the inhabitants with water, having a plant already in existance.
The form of the resolution was, “To purchase and construct,” evidently contemplating that the existing plant, if purchased, was insufficient. The one enterprise of supplying the city with water was contemplated, and we are not, after as careful consideration as we can give this subject, prepared to hold that these proceedings were illegal for this reason.
I do not stop to refer to, or comment upon many cases that have been cited outside of the state; I have not time to do it.
It is said that there is a variance between the reading of the resolution; the proclamation issued by the mayor submitting the proposition to the people and the ordinance passed after the vote of the people providing for the issue of these bonds.
The resolution,I have already stated, was for the erection and purchase; the proclamation designated the purpose for which the.bonds were to be issued, “For the erection of water-works. ” The ordinance, “For the erection or con *229 struction of water-works. ” I do not think these two words add any thing.
E. G. Johnson & W. H. Wells, attorneys_ for Plaintiff.
W. W. Boynton and Lee Stroup, attorneys for Defendant.
The difference in the reading of the resolution, proclamation and ordinance that I have stated, does not, in our judgment, invalidate the proceedings, and it seems to us it would be applying a very technical rule to this transaction to so hold.
Another objection is taken, and that is, that a part of this work is to be done outside of the city limits. Certainly we think this not well taken. Home discretion must be left in all this transaction to the city council. That is where the law has put it; there is where it must be left.
It is said further, the manner of the selling of the bonds is not in accordance with the statute; that we think also, is not well taken.
We have nothing to do with the policy of this enterprise. That is lodged in other hands.
The decree will be for the defendant, dismissing the plaintiff’s petition.